IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| V. | * | CRIMINAL NO. RDB-19-0506 |
| ANTOINE RICH | * | |

## MEMORANDUM AND ORDER

Currently pending are Defendant's Motion for Reconsideration of Pretrial Detention and for Immediate Release (ECF No. 82) ("Motion") , the Government's Response in Opposition to Defendant's Motion (ECF No. 84) ("Opposition"), Defendant's Reply (ECF No. 88), and supplemental filings as requested by the court (ECF Nos. 90, 96, 97) (under seal) and (ECF No. 92). In addition, the court ordered the production of the defendant's medical records from Central Treatment Facility ("CTF") where the defendant is detained (ECF No. 85), and those medical records (ECF No. 87 ) (under seal) have been reviewed by the court. For the reasons stated below, the Motion (ECF No. 82) is denied.

A detention hearing was held in this case on November 13, 2019. After both parties were fully heard, I detailed my reasons for issuing a detention order on the record at the hearing and I issued an Order of Detention summarizing those reasons (ECF No. 59). Pursuant to 18 U.S.C. § 3142(f), a detention hearing may be reopened if the "judicial officer finds that information exists that was not known to the movant at the time of the [detention] hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." Defendant argues that the COVID-19 Virus Pandemic constitutes changed circumstances warranting the defendant's release and, in particular, argues that his conditions of

confinement at CTF (which is part of the D.C. Jail complex) in the setting of COVID-19 put him at an unreasonable risk of contracting the virus, and that the fact that he suffers from asthma increases his risk of complications should he contract the virus.  (ECF No. 82 at 2).  Because concerns relating to the COVID-19 pandemic were not present at the time of the defendant's original detention hearing, the court agrees that § 3142(f) allows a reopening of the detention decision.

The Court "recognize[s] the unprecedented magnitude of the COVID-19 pandemic" and acknowledges that it can constitute new information warranting a reconsideration of a detention order.  United States v. Martin, Crim. No. PWG-19-140-13, ECF No. 209 at  4 (D. Md. Mar. 17, 2020).   The court is also well aware of the challenges at the D.C. Jail regarding the COVID-19 pandemic.  Notwithstanding these circumstances, however, the decision whether to release an individual pending trial still requires an individualized assessment of the factors identified in the Bail Reform Act, 18 U.S.C. § 3142(g).  Id. at 5.  In that regard, I have reviewed the bases for my detention order, and I have reweighed the factors under the Bail Reform Act in light of the current public health emergency, the current COVID-19 situation at the facility where the defendant is being held,  the defendant's existing medical condition, and the defendant's proposed conditions of release.  The record in this case regarding the offenses charged and the defendant's background compel me to conclude that conditions of release cannot be fashioned to address community safety, notwithstanding the potential risk of exposure to the virus that the defendant faces while detained.  The court fully analyzed the §3142(g) factors at defendant's detention hearing.  As noted in the court's detention order, and detailed on the record at the hearing by both the government and the court, an analysis of these factors overwhelmingly supported a finding that detention was appropriate.

The defendant is charged with two Hobbs Act violations: Conspiracy to Interfere with Commerce by Robbery (Count One) and Interference with Commerce by Robbery (Count Two), both in violation of 18 U.S.C. §1951(a). The evidence supporting the charges against the defendant is extremely strong. The nature of this offense, and the specific facts relating thereto, were extremely troubling to the court and formed a significant basis for the court's conclusion that detention of this defendant was appropriate. The charges in this case stem from an April 2019 armed, violent home invasion in Cecil County, Maryland. All aspects of the event, including the pre-entry and escape from the home are captured on video surveillance cameras and clearly depict the defendant and his co-defendants during the course of the entire home invasion. The government provided a detailed account of the home invasion at the detention hearing as well as in the government's Opposition. <u>See</u> ECF No. 84 at 6-10 (attaching still photo clips of the surveillance tape).

The most notable facts regarding the offense include that the occupants of the apartment were a pregnant female adult (V1), a male adult (V2), and their juvenile son (V3), all of whom were present in the apartment when the armed intruders forced entry. Upon entry, and while brandishing firearms, the intruders tackled V2, put what appeared to be a firearm to V2's head, and put V2 in a headlock. One intruder sprinted to the rear bedroom proceeding to a desk drawer or container and removing items, while a third intruder brandished what appeared to be a second firearm. This intruder struck V2 repeatedly and then turned his firearm on V1 before kicking her in her noticeably pregnant stomach. Defendant was a lookout for this crime, and was initially stationed outside the apartment building. He left that post at some point, and appeared in the doorway of the apartment while the armed home invasion was going on, and prior to the

departure of all of the intruders from the apartment. (ECF No. 84 at 8). The defendant is clearly depicted on the video surveillance.

After the intruders left the apartment, and following interviews with the police, V1 began having medical complications as a result of being kicked in the stomach and, as a result, had to have an emergency Caesarian section. (Id. at 11). Subsequent to the robbery, V2 advised that he was a lower level distributor of marijuana and had sold to a number of people in his apartment complex and surrounding area for a long time. He identified one of the intruders as a past customer. Interestingly, V2 also noted that his source of supply lived in the same complex, but in a different building with the same apartment unit number. (Id. at 10-11). Clearly, based upon the behavior of the intruders, they targeted this apartment based on their belief that it would contain money and/or narcotics. In sum, the circumstances of this offense substantially supported a finding that detention was appropriate based on danger to the community, and, indeed, the bulk of the government's argument at the detention hearing and in its Opposition, focused on the facts of this case.

Although the parties characterize the significance of the defendant's participation in the offense differently, they do not appear to dispute the actual facts relating to the defendant, some of which as noted, are captured on the video surveillance. While the defendant did not visibly possess a firearm, the defendant admitted that he knew what the plan was when he agreed to participate in the robbery including, presumably, the use of weapons. (Id. at 11). The defendant knew that there were multiple participants in the intrusion, and that they were forcing entry during the daytime into a residence which was likely to be occupied. The plan was elaborate, including the use of multiple vehicles, and the defendant, by his admitted knowledge of the planning of the home invasion, knew that this crime carried with it a substantial risk of injury to

others. In sum, the argument that defendant played a secondary role in this offense does not persuade this court that he does not present a risk of danger to the community.

The history and characteristics of the defendant also supported the defendant's detention, rather than his release. Although, as defendant notes, his criminal history is not significant, he has relevant criminal history conduct. He has a conviction for Trespass and his probation for that offense was closed as unsatisfactory. He also has convictions for traffic related offenses, a violation of probation /probation revoked for a traffic offense, and has multiple failures to appear for traffic related matters. (ECF No. 59; Pretrial Services Report). In addition, the court has been advised by Pretrial Services that there are three active warrants for the defendant's failure to appear for traffic offenses, two in Harford County and one in Baltimore City. The defendant has represented that the Baltimore City failure to appear occurred while he was detained on state charges related to the charges in this case and that he is attempting to quash that warrant. (ECF No. 97). The defendant has not addressed the two Harford County warrants. At the time of the detention hearing, the court noted that the defendant had a pending assault charge stemming from an alleged assault on a corrections employee during his state incarceration on charges related to this offense (ECF No. 59). Although that charge has since been nolle prossed, this fact does not have a material bearing on the court's detention analysis. Based upon the above, the court concluded at the time of the detention hearing, by clear and convincing evidence pursuant to §3142, that there were no conditions of release which would reasonably assure the community's safety. (ECF No. 59).

The defendant does not reargue the factors originally relied upon by the court beyond noting the defendant's secondary role in the offense and his minimal criminal record, and acknowledges the seriousness of the offense and the weight of the evidence. Rather, the

defendant focuses on the conditions at the D.C. Jail and his health condition.  The defendant notes that he has been in quarantine at CTF twice each for 12-15 days, and now for a third time, although fortunately he has not contracted the virus.  (ECF No. 82 at 3 and 97).   The defendant proffers that the conditions of his first two quarantine periods were unreasonable, which he asserts were confirmed by the findings of the United States District Court for the District of Columbia.  (ECF No. 82 at 3).   Further, the defendant states that his chronic asthma condition, which is supported by the record (ECF No. 82-1; ECF No. 87), puts him at greater risk of complications if he contracts the virus.  (ECF No. 88-2).  As this court has previously noted, the public health emergency created by COVID-19 is a significant concern for all those in detention facilities during this global pandemic.  The court is concerned for the defendant, and for all others both inside and outside of the detention facility.  These concerns, however, do not constitute a basis upon which to release an individual who this court has determined poses a threat to the safety of the community unless the court concludes that the conditions at the detention facility coupled with the defendant's medical conditions warrant a reconsideration of that conclusion.

The court is well aware that the conditions at the D.C. Jail are currently the subject of active litigation and are detailed in opinions of Judge Kollar-Kotelly of the United States District Court for the District of Columbia, who has directed that certain remedial actions be taken at the facility.  <u>Banks v. Booth,</u> Civ. No. CKK-20-849, 2020 WL 1914896 (D.D.C. Apr. 19, 2020) .  As noted by the government, as a result of that judicial oversight, comprehensive enhanced measures and procedural reforms have been put in place at the D.C. Jail and Judge Kollar-Kotelly continues to oversee the facility's implementation of those procedures.  Indeed, "at least one other judge has noted that because D.C. jail facilities are the subject of Judge Kollar-

Kotelly's temporary restraining order, it can be expected that the D.C. Department of Corrections 'will do everything it can to comply with that order so as to prevent the further spread of the virus to its residents and staff.'" United States v. Dorchy, GLR-18-172 (D. Md.), ECF No. 218 at 4 n. 2 (quoting authority).  "Thus, while serious problems have been identified with the D.C. Jail's response to COVID-19, the DOC is now legally mandated to improve those conditions, and there is evidence that it is implementing measures to do so."  United States v. Chase, JKB-19-0473 (D. Md.), ECF No. 34 at 11.  So too, the record reflects that there are medical procedures in place to address the needs of those detainees who test positive, and to engage in contact tracing and quarantining so as to minimize the risk of greater spread of the virus.  (ECF No. 84 at 15-16).  Indeed, the defendant has been in quarantine, now for a third time, but has not contracted the virus.  Thus, the current conditions at the D.C. Jail do not constitute a basis for reconsideration of the defendant's detention order.  Nor is there any evidence of record that the defendant's medical condition is not being adequately addressed.  Rather, the defendant's medical records clearly establish that the D.C. Jail has been attentive to the defendant's needs and do not reflect any current, acute needs of the defendant.  Consequently, although the court is mindful of the fact that the defendant's asthmatic condition exposes him to an increased risk of complications if infected with the virus, that fact alone does not support a reconsideration of the defendant's detention order.

The court has also considered the defendant's proposed conditions of release (ECF No. 82 at 4)  and notes that those  proposed conditions of release are the very same set of conditions proposed at defendant's original hearing.  His proposed custodian is his mother, who defendant argues is a health care worker familiar with health concerns relating to the virus as well as necessary precautions and that her residence, which has no occupants other than her, will allow

for self quarantine of the defendant upon his release.  These conditions, notes the defendant, will ensure that the defendant will not be a COVID danger to anyone other than his mother and that she is trained to take her own precautions.  (Id.) [1]  The court concludes now, as it did at the defendant's detention hearing, that these proposed conditions of release are inadequate to address community safety concerns and that it is not appropriate to release the defendant to the very same location where he resided at the time of these offenses.[2]   Indeed, the court concludes, by clear and convincing evidence, that there is no condition or combination of conditions which will reasonably assure community safety.

In conclusion, the defendant has not presented any new information that warrants a reconsideration of my Order of Detention in accordance with 18 U.S.C. § 3142(f).  Based upon the foregoing, the court concludes that the circumstances proffered by the defendant do not constitute a basis upon which to release an individual who the court has determined poses a threat to the safety of the community. Accordingly, Defendant's Motion (ECF No. 82) is denied.[3]

---

[1] Given that the defendant's mother is a currently employed health care worker, the court sought clarification from the defendant as to the specifics of his mother's contact with patients so as to assess third party risk.  Although the defendant clarified that his mother currently has contact with only one patient, (ECF No. 90), the court is not persuaded that any conditions of release, including those proposed, are appropriate in this case.

[2] The government has also noted that the proposed residence is not appropriate because there is evidence that the defendant was engaged in drug trafficking while residing at the proposed residence.  (ECF Nos. 92 at 1-2 and 96). As noted, the court is not persuaded that any conditions of release are adequate to address concerns regarding the defendant's danger to the community.

[3] Although the introductory paragraph of defendant's Motion notes that it contains an alternative request for the defendant's temporary release pursuant to 18 U.S.C. §3142(i), the defendant offers absolutely no argument, and cites to no facts or law, in support of that request.  Notwithstanding this lack of support for his request, the court has considered release under that section in accordance with applicable law, and has determined that the defendant has not satisfied the "compelling reason" standard warranting his temporary release pursuant to §3142(i).  The court notes that it has broadly employed the analysis suggested by the Fourth Circuit in

Date: 5/27/20 \_\_\_\_\_/s/_____
Beth P. Gesner
Chief United States Magistrate Judge

---

United States v. Creek, No. 20-4251, Doc. 18 (4th Cir. Apr. 15, 2020) in considering COVID-19 based requests for temporary release under §3142(i), although the Creek order did not explicitly apply this analysis to other provisions of the Bail Reform Act.  See United States v. Gallagher, SAG-19-479 (D. Md.), ECF No. 45 at 6-7.