LAW OFFICE OF
ROBERT HENRY WALDMAN
1001 POPLAR AVENUE
ANNAPOLIS, MARYLAND 21401

410-268-5050-PHONE      rhwaldman@rhwaldman.com      443-458-7228---FAX
_____

January 12, 2021

Hon. Richard D. Bennett
U.S. District Court of Maryland
101 W. Lombard St.
Baltimore, MD 21201

                Re:    *U.S. v. Antoine Rich*   19-506-3 RDB

Dear Sir;

    Mr. Rich is on for sentencing on January 21, 2021 at 11am. This letter serves to advise the Court of the defendant's perspective on the sentencing issues.

    Mr. Rich pled guilty to being a member of a conspiracy to commit a Hobbes Act robbery. The plea agreement commits the Court under FRCP 11(c)(1)(C) to a sentence between 60 and 87 months.

    It is important to inspect the facts of the robbery because Mr. Rich's involvement was significantly less than the central planners and actors. Following that, this letter will describe Mr. Rich and his life and goals. The final section will address the sentencing guidelines calculations and their application to Mr. Rich.

    I.    **The Criminal Event**

    On April 25, 2019, three cars left Edgewood in lower Harford County and headed toward Elkton in Cecil County. At a Walmart parking lot in Abingdon, the men in the three cars consolidated into two. They headed north towards Elkton. The lead car was driven by a fellow, Jesse Walton, who hires himself out to drive around others. Also in

- 1 -

that car were Stephen Johnson, Cameron Spicer, and Jaquan Day. It is Mr. Rich's understanding that Day, Spicer and Johnson planned this robbery. Mr. Rich and Tyqwell Booker were in a car driven by Jawuan Bolling. Mr. Rich had been with Mr. Booker at a convenience store in Edgewood that morning; he was approached there by Mr. Spicer and was asked if he wanted to "get" some marijuana. It involved travel to Elkton and Mr. Rich was responsible for his own transportation. Mr. Rich had never been to Elkton. He engaged Mr. Bolling.

It was some time after that Mr. Rich realized that the "getting" of the marijuana was going to be by force. Why he continued is at the center of the moral and psychological mystery of this case. He had never been involved in anything violent before. He was largely unemployed. He was most likely selling marijuana in small amounts. He is by nature a passive fellow. And also, at that time, even though twenty three years old, he was still immature.

To resume, three cars left Edgewood; the car containing Rich, Booker and Bolling closely followed the lead car carrying at least two of the primary actors. At a WalMart in Harford County, a third car met the other two in a parking lot and somebody got out of the third car (which did not travel north) and entered the lead car.

The car driven by Bolling and carrying Rich and Booker followed the lead car, never letting it out of sight; they did not know where they were going.

In Elkton, at a school parking lot adjacent to an apartment complex, the two cars parked. Out of the lead car emerged three fellows in hoodies walking purposefully and suspiciously. Mr. Booker, who is quite large, got out of the front passenger seat of the second car and followed them. He wore a T-shirt and shorts. Out of the rear passenger seat emerged Mr. Rich. He was wearing shorts and a hooded sweatshirt. He started to follow the others but then returned to the car and retrieved out of the back seat a blue scarf. He pulled up his hood and loped off following the others. Counsel characterizes his gait as less purposeful than the others, more in the nature of a spectator anticipating an exciting scene.

At a two-story apartment block with an open stairwell in the middle, the group immediately entered the stairwell. Rich stayed behind at the bottom, nervously stepping to and from the bottom stair.

Meanwhile, upstairs, the resident of the apartment opened the door and the three men from the lead car and Mr. Booker pushed their way inside. One subdued the male resident and another hit and kicked the female resident, who was pregnant, while the third went immediately into a back bedroom to a bedside stand which he rifled through. There was screaming and kicking going on in the living room.

The third man, in the bedroom, finished his hasty search, fled the bedroom and out the living room, and all followed. They ran to the cars and left the area. The whole event from arrival in the school parking lot to departure took less than four minutes.

The pregnant woman was kicked in her abdomen by one of the three hooded and armed intruders and subsequently had to have an emergency C-section. The two men in the living room had pistols; no shots were fired; the guns were brandished. Some cash and some suboxone strips were taken from the bedside stand.

At about halfway through the events, Mr. Rich appeared at the door to the apartment and watched what was happening. He did not enter the apartment and he was not armed and his hood was down and his head was bare.

Some four months later, the investigation led to Mr. Rich. He was arrested and interviewed; he acknowledged his involvement.

## II.   Mr. Rich's Background

Antoine Rich is now 24 years old. He graduated from high school. His letter to the Court indicates he could use some more education. As indicated in the attached letters, he is a member of a close family of primarily women health care workers, nearly all registered nurses. All of them took part in raising him. He has deep family support.

He seems to have been going along reasonably well as an average high school kid with some sports, prom and the like. He worked at entry level jobs here and there, got himself into minor trouble – mostly around driving without a license, sold some marijuana, and hung around with no clear directions.

The reappearance of his theretofore absent father was emotionally troubling, but then the murder of his father two years before this incident and before he and his father were able to clarify their relationship, was even more troubling.

It appears this young man was self-medicating an underlying anxiety; that is, at an early age and until the present moment, he has been attracted to or prescribed anti-depressants and anti-anxiety pills. He is not a drug addict. He could benefit from mental health treatment rather than substance abuse treatment.

He has been incarcerated at the DC Jail or Central Treatment Facility since November, 2019. He has been living through the chaos, fear and solitary confinements that have been the reality of these past ten months. He has lived through the initially lethargic response of the jail leadership; he has lived through at least four quarantine lockdowns of at least two weeks each; he has lived through at least two solitary quarantines in cells with no running water and an inoperable toilet, meals delivered to the door, and no release but for one hour a day. He has been cellmate with men who later tested positive.

He has gotten the message on what it means to be incarcerated.

His Criminal History Category is I.

### III.   The Guidelines Calculation

The guidelines are calculated correctly. We take issue with the two point reduction for role and we explain our reasons here.

The guidelines enhancements start with 5 levels added for firearm brandishing. Antoine Rich did not introduce a firearm into this invasion; indeed, it is unclear when he learned that two of the men in the other car had firearms. Mr. Rich has no history of using a firearm nor even of committing forcible or violent acts. His history consists of driving improperly licensed and being a pest at a gas station convenience store.

The guidelines add 4 levels for a serious injury sustained in the course of the invasion. Mr. Rich did not enter into the apartment; he did not encourage or cheerlead the violence. His is a nonviolent history.

The guidelines add 2 levels because a person was physically restrained. Again, Antoine Rich did not even go upstairs with the others; he only came to the doorframe to see what all the ruckus was about, and he saw one of the others (it was Day or Spicer) struggling with the man of the house.

The guidelines add 1 level because the aim of the conspiracy was to obtain a controlled substance. This is the one level which fully and completely applies to the behavior and role of Mr. Rich.

### IV.     Sentencing Factors

As one reflects on the 18 USC §3553 factors, the defense suggests the following thoughts.

One, this was a planned violent intrusion into the sanctity of a family's home and it could have become, as virtually all robberies might, truly and fatally damaging. It did not. The questions that apply here are When did Antoine Rich learn there was to be a forceful entry?, When did Antoine Rich learn the leaders were carrying guns?, Why did Antoine Rich, who has no history of anything like this, go along with it? Did he have an out that he did not take? Did he not have an out? Did he really know how serious this was going to be?

In terms of his background, he comes from a surrounding and supportive family, which is a great plus for his post-prison prospects. With an apology for the repetition, he has no history of this kind of behavior.

With respect to the kinds of sentences available, one must note that the nature of the conviction will preclude this young man from educational and vocational opportunities within the prison system. One must also note the increased pressures of serving prison time in today's plague environment; it is bad enough walking the halls not knowing if there will be a knife in the neck or a lock in a sock; at least one can do something about that by staying away from gangs and grievances; but the plague is invisible and may come from your best friend in that "congregated living situation."

If there are messages to society delivered by the prison sentences in the ordinary run, it is unclear to this writer what they may be. The only important message here is the one to the young men of Edgewood, Harford County. And five years federal time for a lookout is a pretty telling message.

In summary, the sentencing factors trend toward the mitigating side. The crime was brazen and traumatic and not soon-to-be-forgotten by the father, mother and son. This defendant's role was the least. One cannot imagine him planning and perpetrating a scheme such as this. One can imagine him following along not knowing what this was all about.

What sentence will be no more than necessary but still be adequate to protect society and set this man straight?

### V.     Conclusion and Recommendation

The parties have come to an agreement which gives this Court a very wide latitude – a 60 to 87 month sentence.

If this defendant had a history of bedeviling people and operating without boundaries, this counsel would be hard pressed to argue for the least. But this defendant is not like that.

Given the decent prospects this man will have when he emerges from incarceration, the family support he will have, the absence of a pathological or disordered background, his passive role in the scheme, and the pressures of prison life these days, and given that the granting of one more level of deduction for his role will place this young man at an offense score of 26 and a range of 63-78 months, we respectfully ask this Court to grant that one level of deduction and, further, to account for the added pressures of COVID prison life, impose the sufficient sentence of 60 months.

AS a condition of supervised release, Mr. Rich asks for mental health treatment and any vocational education he can obtain.

He has been incarcerated on these charges since September 10, 2019, first in Cecil County and then to the US Marshal.

Respectfully submitted,


Robert H. Waldman
Counsel for the Defendant
1001 Poplar Ave.
Annapolis, MD 21401
410-268-5050
rhwaldman@rhwaldman.com


I certify that on this 12th day of January, 2021, I filed a copy of the foregoing by ECF and a copy personally emailed to Charles Austin, AUSA.

Robert H. Waldman